**PEABODY COAL COMPANY,**
Petitioner,

v.

**Russell E. TRAIN, Administrator,
Environmental Protection
Agency, Respondent.**

**No. 74–1619.**

United States Court of Appeals,
Sixth Circuit.

July 10, 1975.

Rehearing Denied Sept. 10, 1975.

---

John W. Edwards, Lane, Alton & Horst, Columbus, Ohio, Daniel M. Hall, St. Louis, Mo., for petitioner.

Allen Kirk, Gen. Counsel EPA, Washington, D. C., Wallace H. Johnson, Asst. Atty. Gen., Edmund B. Clark, Bruce J. Chasan, Dept. of Justice, Washington, D. C., for respondent.

Before WEICK, EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

In this action, filed originally in this court, petitioner, Peabody Coal, attacks the procedures by which Russell E. Train, Administrator of the United States Environmental Protection Agency has undertaken to inaugurate enforcement of environmental protection standards through a state permit program submitted to the Administrator by the Governor of Ohio under Section 402(b) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1342(b) (Supp. III, 1973).

Peabody contends that the Administrator did not follow lawful procedures in granting Ohio's application to operate such a permit program applicable to coal mining companies in the State of Ohio.

The permit program is known as the National Pollutant Discharge Elimination System. As to it § 101(b) of the Federal Water Pollution Control Act, 33 U.S.C. § 1251(b) (Supp. III, 1973), states that it "is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution  .  .  .."

Preliminarily, however, we are required to deal with respondent Train's contention that this court is without jurisdiction because the petition was not

timely filed. In this regard respondent relies upon 33 U.S.C. § 1369(b)(1), which provides in applicable part as follows:

(b)(1) Review of the Administrator's action (A) in promulgating any standard of performance under section 306 [33 USC § 1316], (B) in making any determination pursuant to section 306(b)(1)(C) [33 USC § 1316(b)(1)(c)], (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 307 [33 USC § 1317], (D) in making any determination as to a State permit program submitted under section 402(b) [33 USC § 1342(b)], (E) in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306 [33 USC § 1311, 1312 or 1316], and (F) in issuing or denying any permit under section 402 [33 USC § 1342], may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such ninetieth day.

33 U.S.C. § 1369(b)(1) (Supp. III 1973).

▮ Petitioner's brief acknowledges that the Administrator's "determination as to [the] state permit program" concerned here was made on March 11, 1974, by letter from Administrator Train to Governor Gilligan and that the instant petition was not filed until 92 days thereafter on June 11, 1974. Petitioner

claims, however, that it did not receive any official notice until the publication of the Administrator's letter in the Federal Register of July 16, 1974. 39 Fed. Reg. 26061 (1974). Petitioner does not, however, assert that it did not *in fact* have timely and adequate notice of the Administrator's letter. Actually, as the dates show, the petition was filed before the Federal Register publication took place.[1] In addition, the statutes contained another 90-day time limit within which the Administrator was required to determine that the state permit program application met the standards of the federal act or to suspend issuance of federal permits. 33 U.S.C. § 1342(c)(1) (Supp. III, 1973). The Administrator's letter of approval was dated March 11, 1974. This statutory limitation should have served to alert petitioner to expect action on or about the 90th day.

▮▮ This court is not given to harsh application of statutes of limitation. *See, e. g., Reid v. Volkswagen of America, Inc.,* 512 F.2d 1294 (6th Cir. 1975); *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508 (6th Cir. 1974); *Jordan v. United States,* 503 F.2d 620 (6th Cir. 1974). But we find no facts here which suggest equitable tolling of this statute. And, as we see this case, what is sought from us is a judicial amendment of the statute to substitute the date of publication in the Federal Register for the date of approval as chosen by Congress. This invitation we decline.

The legislative history of this Act shows that Congress desired a clear and prompt time schedule for applications for judicial review. S.Rep.No.92–414, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Admin.News pp. 3668, 3750–51. The ju-

---

1. Petitioner's brief explains that its petition was filed on the basis of "a rumor followed by a diligent search for public notice of the Administrator's decision."

Respondent at oral hearing of this case submitted a "List of Respondent's Citations at Oral Argument" which contained a copy of the Ohio E.P.A. Press Release, dated March 11, 1974, concerning the Administrator's decision and a copy of the Columbus Citizen Journal's story of March 12, 1974, (and several later newspaper stories) announcing the Administrator's decision to approve the Ohio permit program.

None of the facts contained in this footnote, however, are part of the record of this case, and, hence, we do not found our decision thereon. If, however, we were to consider them as stipulated facts, they would in no way alter the result we reach.

dicial review provisions as originally drafted in both H.R. 11896 § 509 and S. 2770 § 509 provided for a 30-day time limit in which to file a petition for review. In the final version the time limit was extended to 90 days, but the emphasis upon specific time limitation remained.

We believe the sense of urgency concerning environmental protection portrayed in the Act we now construe was equally present in the Clean Air Act, *See* 42 U.S.C. §§ 1857 and 1857h–5(b)(1)(1970), and that cases enforcing the statutory time limits contained therein are precedent for our present decision. *Granite City Steel Co. v. EPA,* 501 F.2d 925 (7th Cir. 1974). *See also Union Electric Co. v. EPA,* 515 F.2d 206 (8th Cir. 1975); *Getty Oil Co. (Eastern Operations) v. Ruckelshaus,* 467 F.2d 349 (3d Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973).

In the *Granite City* case the Seventh Circuit said:

> The Company did not petition this Court to review the December 31, 1974, attainment date in the Illinois rule when it was approved by the EPA on May 31, 1972. Such a petition had to be filed within 30 days from that approval under Section 307(b)(1) of the Clean Air Act (42 U.S.C. § 1857h–5(b)(1)). Although the Company formally disclaims any attack on the December 31, 1974, date, it is now attacking the increment of progress dates in the federal rule on the ground that the attainment date itself is unreasonable. Such a collateral attack would evade the time period for reviewing the attainment date and cannot be countenanced. Cf. Getty Oil Co. v. Ruckelshaus, 467 F.2d 349, 358–359 (3d Cir. 1972). The time limit is not arbitrary but is designed to get issues resolved promptly and thereby prevent delay in cleaning the air.

*Granite City Steel Co. v. EPA, supra* at 926.

Similarly we find nothing arbitrary or unreasonable in Section 1369(b)(1) (Supp. III, 1973).

We hold that petitioner's failure to file within the express time limits provided in the statute deprives this court of jurisdiction and the petition for review is dismissed.