Albert HARK, on behalf of himself and all others similarly situated, Plaintiff,

and

Gerald Lee Smith, Jon M. Ricks, Donna Fialkoff, Marc Estrin and Edward R. Buxton, Plaintiff Intervenors,

v.

Sandra DRAGON, Individually and as Director of the Vermont Comprehensive Employment and Training Office; Ray Marshall, individually and as Secretary of Labor; and Kevin Kennedy, individually and as Director of Champlain Valley Work and Training, Inc.

Civ. A. No. 78–260.

United States District Court,
D. Vermont.

May 3, 1979.

---

4. See note 1 supra.

310

Neil H. Mickenberg, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiff Hark and plaintiff intervenors Smith, Ricks, Fialkoff and Estrin.

H. Thomas Andersen, Hoff, Wilson, Jenkins & Powell, Burlington, Vt., for plaintiff intervenor Buxton.

Brian L. Burgess, Asst. Atty. Gen., State of Vermont, Montpelier, Vt., for defendant Dragon.

George E. Taft, Burlington, Vt., for defendant Kennedy.

Karen McAndrew, Asst. U. S. Atty., Burlington, Vt., for defendant Marshall.

## OPINION AND ORDER

COFFRIN, District Judge.

In this action plaintiffs challenge the administration of the federal Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801–992, in the State of Vermont. The plaintiffs, workers who have been or are now employed in CETA-funded jobs, have requested class certification under Fed.R.Civ.P. 23(a) and (b)(2). The defendants are Sandra Dragon, Director of the Vermont Comprehensive Employment and Training Office (CETO), the state agency implementing CETA in Vermont; Ray Marshall, the United States Secretary of Labor; and Kevin Kennedy, Director of Champlain Valley Work and Training, Inc. (CVWT) a private organization that secures positions for CETA-eligible individuals under a contract with Vermont CETO. The defendants are sued in both their individual and official capacities.

The original complaint and the verified complaints of plaintiff intervenors state five causes of action protesting alleged statutory and constitutional violations arising out of the defendants' implementation of a policy limiting CETA employees in Vermont to a maximum term of one year in any public service employment (PSE) position funded under Titles II and VI of CETA. Plaintiffs allege that this policy violates Congress' mandate in the creation of CETA, contravenes the due process and equal protection guarantees of the fifth amendment to the Constitution, and is invalid because it was promulgated without notice, hearing and publication as required by the Administrative Procedure Act, 5 U.S.C. §§ 552, 553. The court will examine these contentions in turn below.

The original complaint in this action was filed on behalf of Albert Hark, a CETA employee with the Lamoille Area Health Council. Mr. Hark was found eligible for PSE under CETA in May 1977. On June 14, 1977, CVWT placed him in a job at the Lamoille Area Health Council, where he is still employed. On July 11, 1977, defendant Dragon issued a policy statement entitled "Termination Policy # 2," requiring termination of CETA PSE employees within one year of the date of hire, but permitting extensions to this term in certain cases. Mr. Hark applied for, and defendant Dragon granted, a three-month extension of his maximum employment period, and his termination date was moved forward to November 4, 1978. This suit was filed on November 1, 1978, three days prior to the scheduled termination date, and Mr. Hark has continued in his employment since that time under a temporary restraining order issued by the court on November 3, 1978, as well as an informal arrangement with the defendants.

The court has received motions to intervene from several other CETA employees who have lost or who may lose their jobs pursuant to defendants' one-year maximum employment policy. The intervenors, Gerald Lee Smith, Jon Ricks, Doreen Newton, Donna Fialkoff, Edward R. Buxton and Marc Estrin, stated facts and made allegations sufficient to satisfy the requirement of Fed.R.Civ.P. 24(b), permitting intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." We granted the motions to intervene after a hearing on December 20, 1978.

█ The court has jurisdiction over defendant Marshall under 28 U.S.C. § 1331(a) authorizing suits against federal officials arising under federal laws or the Constitution without regard to the amount in controversy.[1] Jurisdiction over the state de-

---

1. Jurisdiction over defendant Marshall is also alleged to lie under 28 U.S.C. § 1361, an assertion which the federal government disputes.

Our disposition of the other issues in this case makes a determination of this issue unnecessary.

fendants is grounded in 28 U.S.C. § 1343(3) which governs suits for the redress of constitutional rights. The court finds that the constitutional claims made in the third and fourth causes of action are substantial under the minimal requirements set forth in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); consequently the court has pendent jurisdiction to consider the statutory claims made in the other causes of action. *Greklek v. Toia*, 565 F.2d 1259 (2d Cir. 1977).

Defendant Dragon has moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) while defendant Marshall has submitted a motion to dismiss pursuant to Fed. R.Civ.P. 12(b). Because the court's decision turns on an examination of the legal arguments raised by all parties as well as the facts developed in the context of the motion for summary judgment, we will discuss the merits of the motions together as if they were both brought under Rule 56. Fed.R. Civ.P. 12(b).

■ Before turning to discussion of the merits, however, two preliminary issues must be resolved. First we address defendant Marshall's contention that we must dismiss the action because plaintiff has failed to exhaust his administrative remedies. Defendant correctly observes that CETA and the Secretary's regulations establish an administrative grievance procedure for the resolution of disputes and complaints within the agency, and require appeals therefrom to be taken to the courts of appeals. 29 U.S.C. §§ 816–817; 29 C.F.R. 98.26. However, he appears to ignore the clear meaning of 29 U.S.C. § 816(*l*), which states:

> The existence of remedies under this section shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the Act or the regulations promulgated under the Act, from instituting a civil action or pursuing any other remedies authorized under Federal, State, or local law.

Because the central focus of the present action is plaintiffs' argument that Vermont CETO's regulations on PSE employment violate certain provisions of CETA, 29 U.S.C. § 816(*l*) authorizes plaintiffs to sue in this court without exhaustion of the administrative procedures set forth in the Act. Accordingly, we deny defendant's motion to dismiss for failure to exhaust administrative remedies.

■ The second preliminary issue is plaintiffs' motion for class certification. The proposed class consists of all persons within the State of Vermont who were employed in CETA-funded PSE jobs on September 30, 1978, and who have been or will be terminated subsequent to that date as a result of defendants' policies requiring termination of PSE employment within one year of the date of hiring. For the reasons given below, we grant plaintiffs' motion for class certification.

This is an action for declaratory and injunctive relief against implementation of governmental policies generally applicable to members of the class and in a situation where the court's rulings on the issues presented will apply to the class as a whole. The action is therefore appropriate for certification under Fed.R.Civ.P. 23(b)(2), so long as the plaintiffs satisfy the independent requirements of Fed.R.Civ.P. 23(a). *See Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir. 1968); *D.C. v. Surles*, Civ. No. 78–91 (D.Vt. Dec. 6, 1978). We find that those requirements are satisfied in this case. Evidence submitted to the court by defendants indicates that 238 CETA PSE employees were terminated between September 30, 1978, and December 8, 1978, as a result of policies challenged here; at least 844 other individuals in Vermont have been terminated since December 8, 1978, or may be terminated in accordance with these policies. Joinder of all members of this class would therefore be impracticable. The statutory and constitutional claims raised in this litigation are common to the class, and can be decided without reference to the differences in factual circumstances among the class mem-

bers. For this reason the claims of the named plaintiffs are typical of the claims of the class despite some difference in the specific relief that may be appropriate in particular cases. There is no evidence, nor any suggestion, that there exists any antagonism between the interests of the named plaintiffs and the interests of other members of the class. Finally, the named plaintiffs are represented by experienced and conscientious counsel, who have responsibly prepared and vigorously pressed this case. *See Eisen v. Carlisle and Jacqueline,* 391 F.2d 555 (2d Cir. 1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For the foregoing reasons the court grants the motion to certify the plaintiffs' class as defined above.

■ We now consider the merits of plaintiffs' substantive causes of action. As noted above, the legal issues raised in defendant Marshall's motion to dismiss and defendant Dragon's motion for summary judgment are identical and are therefore considered together. Plaintiffs' first cause of action turns on interpretation of specific statutory language governing the duration of CETA employment in PSE positions. After careful consideration of the statutory language and its legislative history, the court cannot agree with plaintiffs' contention that defendants' one-year maximum tenure policy violates the commands of 29 U.S.C. § 824(h) and (j).

Section 824(j) of Title 29, enacted in 1978, provides:

Notwithstanding any eligibility limitations on public service employment in this Act, a person who on September 30, 1978, held a public service employment position under this Act may continue in such position subject to subsection (h) of this section.

Contrary to plaintiffs' contentions, this section does not secure rights to any duration of employment for PSE workers; the section only exempts certain PSE workers from the "eligibility limitations" established elsewhere in CETA and its amendments. These limitations require PSE workers to reside within a qualified high-unemployment area, and give "special consideration" priorities to the handicapped, unemployed women, disabled veterans and others. *See, e. g.,* 29 U.S.C. §§ 824, 871. When it enacted these tighter eligibility standards, Congress decided to "grandfather in" current PSE workers who would not have met those requirements. But, Congress explicitly made these same workers subject to the durational employment limitations set out in section 824(h). That subsection states, in pertinent part:

(h)(2) No participant may be paid wages from funds under this Act for public service employment for more than 78 weeks in a 5-year period.

(3) For purposes of paragraph (2), no more than 26 weeks of public service employment financed in whole or in part under this Act prior to October 1, 1978, shall be considered as part of the 78 weeks.

These provisions evidence a congressional intent to limit the benefits any individual may receive under CETA to a maximum of 18 months of PSE employment in any 5-year period; they do not establish any minimum period of employment to which PSE workers would be entitled, or even suggest that such a minimum would be desirable. The legislative history of the durational limitations reveals Congress' purposes: (1) to encourage PSE workers to find unsubsidized employment, (2) to discourage employers from using PSE workers as replacements for permanent employees, and (3) to assure that the greatest possible number of eligible persons will be able to take PSE jobs. H.R. Rep. No. 95–1124, 95th Cong., 2d Sess. 9 (1978). The attainment of these objectives is served by a maximum durational limit, but not by a guaranteed minimum period of employment. The defendants' implementation of a one-year maximum period is consistent with these policies and is not prohibited by statute.

■ Plaintiffs' second cause of action, based on a more general argument of statutory interpretation, fails for similar reasons. Plaintiffs argue that the Act as a whole,

and especially 29 U.S.C. § 823(f), requires prime sponsors to insure that CETA workers are employed and trained in a manner sufficient to "lead to employment opportunities enabling participants to increase their earned income and to become economically self-sufficient." *Id.* They claim that defendants' one-year limit for PSE employment arbitrarily violates that congressional command and policy determination. This argument ignores the complex reality of the problems of unemployment as well as Congress' concern with a number of competing goals when it created CETA. These other goals include: making training and employment opportunities available "on an equitable basis . . . among significant segments of the eligible population," 29 U.S.C. § 823(b)(1)(A); bringing members of economically disadvantaged groups into the economic mainstream, *see* 29 U.S.C. §§ 824(b), 850, 872–78; providing "transitional" employment, 29 U.S.C. § 853; coordinating training programs and employment opportunities; assuring that CETA workers will not displace currently employed workers, 29 U.S.C. § 823(e)(2); and creating a "flexible, coordinated, and decentralized system of Federal, State, and local programs" for training and employment, 29 U.S.C. § 801.

Congress has given the Secretary of Labor and the state and local prime sponsors considerable discretion in implementing programs in the service of these competing goals. *See* 29 U.S.C. §§ 813, 828. The prime sponsors are required to develop a plan assuring provision of training and employment services "to those most in need," based on "objective locally established criteria." 29 U.S.C. § 813(b)(12). When it enacted the 18-month limit on PSE employment, Congress obviously confronted the possibility that 18 months might be too short a period to guarantee a PSE worker subsequent employment on a permanent basis, but decided that a balance must be struck between this goal and the other goals of the Act. Congress did not explicate the balance for employment periods shorter than 18 months, but left that balancing to the discretion of the Secretary

and the prime sponsors. Vermont CETO's one-year durational employment policy is a reasonable response to the conflicting requirements of the Act and falls within the broad discretion Congress granted to participating prime sponsors.

■ In their third and fourth causes of action plaintiffs allege a deprivation of plaintiffs' constitutional rights to due process and equal protection as a result of defendants' durational employment policies. In the third cause of action plaintiffs claim that the durational policy arbitrarily discriminates against those who have been employed for more than 12 months and bears no rational relationship to the objectives of the Act. Plaintiffs have not shown, however, that the administrative classification employed here involves either a suspect class or a fundamental interest that would require the application of strict scrutiny. *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Indeed, the federal courts have held that CETA employees serve without job tenure and do not even have a property interest in, much less a fundamental right to continued CETA employment. *Prout v. ADA Planning Association*, Civ. No. 78–1150 (D.Idaho, Jan. 18, 1979); *Barros v. Daken*, Civ. No. H–77–199 (D.Conn. July 3, 1978); *Malaney v. Sheehan*, Civ. No. H–77–93 (D.Conn. June 27, 1978). As noted above, defendants' maximum employment policy is a reasonable compromise among several competing goals of the Act and is therefore rationally related to its objectives. Plaintiffs have not suggested a basis for distinguishing on constitutional terms between a 12-month maximum, allegedly bearing no rational relationship to the Act, and the 18-month maximum explicitly set forth in the Act which plaintiffs do not challenge.

■ The fourth cause of action applies similar arguments to the variances across the United States in prime sponsor employment duration policies. As a matter of constitutional law this argument falls before the observations that neither suspect

classifications nor fundamental interests are involved and that congressional flexibility to implement national programs through state and local agencies is inherent in our federal system. Since the Act is built upon a structure of implementation by prime sponsors, each of which is to develop its own implementation plan based upon local needs and priorities, it follows that regional program differences are not only rationally related to the Act's objectives, but may actually be required by the statute. *See* 29 U.S.C. § 813.

 The final element of plaintiffs' complaint raises the argument that the Regional Administrator's DOL Region I Series Letter 91–78 is a substantive rule or policy statement of general applicability that defendants cannot apply adversely to plaintiffs because it was not promulgated under the rulemaking provisions of 5 U.S.C. § 553 or published in the Federal Register as required by 5 U.S.C. § 522(a)(1)(D)–(E). But the "PSE Maximum Duration Policy" letter at issue is neither a legislative nor an adjudicatory rule within the meaning of those terms in the Administrative Procedure Act, and therefore does not activate either the public notice or rulemaking requirements of that act.

The operative test for determining whether an agency pronouncement must be published in the Federal Register under § 552(a)(1)(D)–(E) is whether the pronouncement is "of such a nature that knowledge of it is needed to keep [affected parties] informed of the agency's requirements in respect to any subject within its competence." *Appalachian Power Co. v. Train*, 566 F.2d 451, 455 (4th Cir. 1977), *quoting United States v. Hayes*, 325 F.2d 307, 309 (4th Cir. 1963). Thus a press release containing general statements about the preferences of federal agencies is not within the publication requirement. *Airport Commission of Forsyth County v. C.A.B.*, 300 F.2d 185 (4th Cir. 1962). For the reasons given below, the court finds that the Regional Administrator's DOL Region I Series Letter 91–78 is not of such a nature that it affects the legal rights of plaintiffs or any other persons, and is thus not within the scope of the publication requirement. It follows from this conclusion that the letter at issue does not promulgate a "rule" within the definition set out in 5 U.S.C. § 551, and does not therefore trigger the rulemaking requirements of 5 U.S.C. § 553. For the purposes of § 553, the Regional Administrator's letter is nothing more than, and is quite possibly less than, a "general statement of policy" exempt from APA rulemaking requirements under § 553(b)(3)(A). *See Pacific Lighting Service Co. v. F.P.C.*, 518 F.2d 718 (9th Cir.), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975).

As Professor Davis has pointed out, it is not easy to draw sharp distinctions between legislative rules, adjudicatory rules, interpretative rules, policy statements and other pronouncements by administrative agencies. 1 K. Davis, *Administrative Law Treatise* § 5.01 (1958). In a particular case it is helpful to take into account the purpose and effect of an agency's decision or statement of policy. In the present case it is apparent that the policy letter at issue is merely a letter of recommendation from the Region I Administrator for Employment and Training to the prime sponsors of CETA programs in the region. The letter is dated March 31, 1978, several months before the passage of the 1978 CETA Amendments. The letter explicitly stated that although there was no legislative requirement for prime sponsors to establish a maximum enrollment period, the regional administrators would "continue to encourage" the prime sponsors to do so.

Even though 29 U.S.C. § 824(h) now requires the establishment of maximum employment periods, DOL Region I Series Letter 91–78 did not and does not do so, and its legal status is not enhanced by the 1978 Amendments—it is merely a recommendation to prime sponsors, not an agency rule or decision. In CETA, Congress created a decentralized, flexible system for program implementation by state and local prime sponsors, who are free to adopt or reject many of the recommendations of the feder-

316

al agency, including the recommendation contained in the DOL Region I Series Letter 91–78. In this connection, the court notes that not all of the prime sponsors in Region I established maximum employment policies in response to the Regional Administrator's recommendation and their failure to do so had no bearing on subsequent federal approval of or federal funding of their programs. As the parties have stipulated, the federal defendants have never even recommended adoption of the one-year limit that is the subject of this lawsuit. Federal Defendant's Answers to Plaintiff's Interrogatories, p. 6, (filed Dec. 12, 1978). We conclude that this letter had neither the purpose nor the effect of requiring prime sponsors to adopt maximum enrollment periods of any length; having no legal effect, it is not subject to the publication and rulemaking requirements of the APA.

For the foregoing reasons, plaintiffs' motion for summary judgment is denied. Defendant Dragon's and defendant Kennedy's motions for summary judgment are granted. Defendant Marshall's motion to dismiss is treated as a motion for summary judgment and is hereby granted. The Temporary Restraining Order issued November 3, 1978, is dissolved.