**WATERBURY GARMENT CORPORATION, Plaintiff,**

v.

**STRATA PRODUCTIONS, INC., Jerry Fox, Sara Fox, Ron Kutz and Denise Shapiro, Defendants.**

**STRATA PRODUCTIONS, INC., Jerry Fox, Sara Fox, and Ron Kutz, Third-Party Plaintiffs,**

v.

**AMERICAN BROADCASTING COMPANY (A Division of the American Broadcasting Companies, Inc.) and American Broadcasting Company Merchandising, Inc., Third-Party Defendants.**

**No. 82 Civ. 0134 (KTD).**

United States District Court, S.D. New York.

Nov. 22, 1982.

Wendy, Adler & Liss, New York City, for plaintiff; Herbert Adler, Philip E. Klein, New York City, of counsel.

Berger & Palmer and Rouhana & Trinko, New York City, for defendants and third-party plaintiffs; Peter L. Berger and Curtis V. Trinko, New York City, of counsel.

Davis & Gilbert, New York City, for third-party defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Waterbury Garment Corporation ("Waterbury") commenced this action against defendants Strata Productions, Inc. ("Strata") and Jerry Fox alleging infringement of certain trademarks for which plaintiff claims to be the exclusive licensee. Presently before me is defendants' motion to disqualify the attorneys representing plaintiff in this action, Herbert Adler, Philip Klein, and the law firm of Wendy, Adler & Liss, because of their previous representation of defendants in other matters. For the reasons set forth below, this motion is denied.

## FACTS

In 1977, Herbert Adler first represented defendant Jerry Fox in an action against Fox's former employer, Sea Isle Sportswear. Approximately three years later Fox again contacted Adler to discuss the possibility of marketing garments with the names of soap operas and other television shows endorsed thereon. Adler informed Fox that in order to effectuate this plan, Fox would have to acquire licenses from the owners of the various trademarks. When Fox initially spoke with the owners of the trademarks, he found that these licenses were most likely granted to experienced manufacturers and that a substantial initial cash down payment was required. Consequently, Fox approached several established clothing manufacturers, including Waterbury, with his idea. After several discussions, Fox and Waterbury agreed to enter into a combined business venture whereby Waterbury was to obtain licenses from the companies involved in the production of the desired television shows and thereafter Fox was to act as the exclusive sales agent for all garments manufactured by Waterbury under these licenses. All the licenses obtained were granted in Waterbury's name. Adler, acting as Fox's attorney, drafted this initial agreement between Fox and Waterbury. Since that time, Adler and his firm have acted as legal counsel for the Waterbury-Fox business venture. Adler was responsible for the review of all license agreements including the ABC trademark which is the subject of this litigation. Adler was paid for these services by Waterbury.

During this same time period, at Fox's request, Adler formed a new corporation, Fometco Sales, Inc. ("Fometco"). Fometco was established to conduct the mail order sales of the licensed garments. Fox assigned his interest in the Waterbury-Fox venture to Fometco to assure corporate participants an interest in commissions from the sales of licensed articles.

In September, 1981, Waterbury's President, Jack Brownstein, expressed to Fox his desire to modify their existing agreement so that Fox would become an employee of Waterbury rather than an independent participant in the business venture. During the ensuing negotiations, Fox was purportedly represented by Philip Klein, another attorney with Wendy, Adler & Liss. The parties were, however, unable to agree on the terms of either an employee or a severance arrangement. According to Fox, the possibility of forming a new corporation and obtaining separate licenses from ABC for various types of merchandise was then discussed with Klein. Fox alleges that Klein subsequently disclosed this possibility to Waterbury's officers. In response to Klein's alleged breach of confidence, Fox engaged other counsel to represent him in negotiating his severance from Waterbury. The parties still remain unable to arrive at a mutually acceptable termination agreement.

In late 1981, Fox set up a new corporation, Strata without the assistance of Wendy, Adler & Liss. Through Strata, Fox attempted to enter into a new license agreement with ABC Merchandising, Inc. ("ABC Merchandising") for supposedly different goods than had been licensed to Waterbury. Upon learning that Fox was offering certain clothing items apparently with Waterbury's ABC trademarks, Waterbury immediately notified Fox and ABC Merchandising on January 7, 1982, that it considered Fox's actions to be in violation of its exclusive license rights. ABC Merchandising subsequently refused to execute its license agreement with Fox.

On January 8, 1982, Waterbury filed this action against Fox, Strata and Denise Shapiro, the ABC Merchandising employee who was negotiating the license agreement with Fox.[1]

Waterbury's complaint alleges trademark infringement, false descriptions and false representations under the Lanham Act, unfair competition, common law trademark infringement, trademark dilution, and conspiracy to unfairly compete with plaintiff.

---

1. Fox's wife, Sara, and Ron Kutz, an employee of Strata were also named as defendants.

Defendants' counterclaims allege unfair competition and malicious and willful interference with their lawful business. This claim is grounded upon Waterbury's alleged role in ABC Merchandising's decision not to execute a license with Fox.

Defendants also filed a third-party complaint charging ABC and ABC Merchandising with breach of contract stemming from their failure to honor an alleged license agreement entered into in December, 1981. This complaint also seeks damages for alleged harm to defendants' business.

## DISCUSSION

■ Determination of this motion to disqualify plaintiff's attorney requires a balancing of the plaintiff's right to retain his own freely chosen counsel, the defendants' right to untainted prosecution of the lawsuit, and society's need to maintain the highest ethical standards of professional responsibility. *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 564–65 (2d Cir.1973). *MacArthur v. Bank of New York,* 524 F.Supp. 1205 (S.D.N.Y.1981). Canon 4 of the American Bar Association's Code of Professional Responsibility protects these competing interests and provides that "[a] lawyer should preserve the confidences and secrets of a client." Canon 9 further provides that "[a] lawyer should avoid even the appearance of professional impropriety." *See Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 753 (2d Cir. 1975) (The starting point in the determination of whether to disqualify an attorney is Canons 4 & 9). It is with these ethical considerations in mind that standards have evolved to resolve challenges on attorney representation.

■ The initial question in a disqualification case is to determine whether Fox is a present or a former client of Adler and his firm. When the moving party is a present client of his adversary's attorney the representation is "prima facie improper" and disqualification is required. *Cinema 5 Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir. 1976); *Sapienza v. New York News, Inc.,* 481 F.Supp. 676, 679 (S.D.N.Y.1979); *see*

*also Glueck v. Jonathan Logan, Inc.,* 512 F.Supp. 223 (S.D.N.Y.), *aff'd,* 653 F.2d 746 (2d Cir.1981). In the case of a former client, however, the Second Circuit has held that representation of a now adverse party is not *per se* improper without a showing by the former client that the matters in the pending suit are "substantially related" to the matters in which the attorney had previously represented him. *Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir.1977); *Emle Industries, supra,* 478 F.2d at 570.

There is no doubt that Fox is a former client of Adler and his firm. Since the formation of defendant Strata and throughout this litigation Fox has retained separate and independent counsel. Moreover, Fox has not demonstrated the existence of *any* ongoing representation of his interests by Adler or his firm. Adler's representation of Fox was for discrete transactions beginning in 1977 and related solely to the Waterbury-Fox venture, the formation of Fometco in connection with the Waterbury-Fox venture and Fox's lawsuit against his former employer. Since the breakdown of the Waterbury-Fox relationship, there has not been any further representation. From this evidence it is apparent that Fox is a former client.

The next issue to be resolved before the substantial relationship test is applied is whether the attorney was in a position to receive information which his former client might reasonably have expected to be withheld from the lawyer's present client. *Allegaert v. Perot,* 565 F.2d at 250. During the time Adler served as attorney for the Waterbury-Fox joint venture, Fox could not have reasonably assumed that any information divulged to Adler would be withheld from Waterbury. Both parties were aware of Adler's joint representation and Fox has presented no evidence that within the joint venture there was an expectation that any information was confidential and thus should be withheld from either party.

It is possible, however, that during Fox's discussions with plaintiff's counsel, after the breakup of the joint venture, Fox had an expectation of confidentiality. Fox pur-

portedly discussed the dissolution of the joint venture and the strategy for his subsequent business activities with Klein and Adler. He would not expect that such discussions would be relayed to Waterbury in light of their deteriorating relationship. Because Adler and his firm now represent Waterbury, it is necessary to determine whether these preliminary discussions with respect to the dissolution of the joint venture are substantially related to the matters in the present action. *See id.*

■ The substantial relationship test places a justifiably high standard of proof on one who seeks to disqualify his former counsel. Thus, it protects the rights of all interested parties: the plaintiff, the defendant and the Bar. *See Government of India v. Cook Industries,* 569 F.2d 737, 739 (2d Cir.1978). Disqualification is granted only upon a showing that the relationship between the issues in the prior and present matters is "patently clear." *Id.* at 739–40. The issues must be "identical" or "essentially the same" in order for disqualification to be granted. *Id.* at 740.

■ Applying these standards to the present case I find that there is no substantial relationship warranting disqualification. The issue of trademark infringement in its various forms as raised in the complaint and the issues of breach of contract and tortious interference with contractual relations alleged in the counterclaims and third-party complaint are not "essentially the same" or for that matter related to the considerations involved in the dissolution of the joint venture. The prior dealings between the plaintiff and defendant do not constitute a "substantial relationship" when the instant claims are unrelated to those dealings. The termination of the Water-

bury-Fox joint venture is separate and distinct from the alleged subsequent acts of all parties. Wendy, Adler & Liss' discussions with Fox during the dissolution of his relationship with Waterbury, therefore, is an inadequate basis for prohibiting the law firm's present status as plaintiff's counsel.

■ Defendants also cite Disciplinary Rule 5–102 of the Code of Professional Responsibility, "Withdrawal as Counsel When the Lawyer Becomes a Witness,"[2] as an additional ground for disqualification of plaintiff's attorney. N.Y.Jud.Law § DR 5–102 (McKinney 1975). This rule sets forth parameters under which a lawyer should withdraw as counsel when it is obvious that he may be called as a witness. Fox in his affidavit states that he may call Herbert Adler and Philip Klein to testify in the present action and thus they should be disqualified under 5–102(B). It is unclear how the testimony of either Adler or Klein is relevant to the claims asserted by either the plaintiff or defendant. The primary issue in this case seems to be the exclusivity of a license granted by ABC Merchandising to Strawberry Shirtcake, Inc. ("Strawberry") and subsequently assigned to Waterbury. While Adler as counsel to the Waterbury-Fox business venture did review the initial licensing agreement with ABC Merchandising, and as such might have unique knowledge regarding the parties' intended meaning, that agreement was only for "pajamas and bathrobes." The parties do not contest the scope of this license. The contested agreement upon which Waterbury bases its claim of exclusivity was originally granted by ABC Merchandising to Strawberry before it was assigned to Waterbury. This license covers only the following items:

**2.** Disciplinary Rule 5–102 provides:

 Withdrawal as Counsel When the Lawyer Becomes a Witness.

 (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representa-

tion and he or a lawyer in his firm may in [certain] circumstances . . . .

 (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

"heat transfers and screen printed garments (to include T-shirts, night shirts, sweat shirts and applicable approved casual wear: sleepware [sic] with the *exclusion of pajamas and robes.*" Plaintiff's complaint, Exhibit B, Schedule A. (emphasis added). While Adler and his firm worked on the assignment from Strawberry to Waterbury, Wendy, Adler & Liss was not in anyway involved in the Strawberry-ABC Merchandising licensing agreement. Thus, the law firm possesses no inside knowledge as to whether ABC Merchandising and Strawberry intended the original license to be exclusive. Thus, given the present posture of the case it does not appear that, even if Adler or Klein were called as witnesses, their testimony would be prejudicial to Waterbury. Defendants' threat to call plaintiff's counsel as witnesses, without any evidence as to how their testimony is relevant to the instant case, is insufficient to warrant disqualification.

Accordingly, defendants' motion to disqualify plaintiff's counsel is denied.

SO ORDERED.