Aureo Rivera DAVILA and Aureo E. Rivera, Plaintiffs,

v.

ASSET CONSERVATION, INC., Gabriel Guijarro Brunet, Iris Nieves De Guijarro, and their marital conjugalship, Defendants and Third Party Plaintiffs,

v.

CHAPMAN INDUSTRIES CORPORATION, Chapman Products, Inc., Chapman Security Systems, Inc., and Code-Alarm, Inc., Third Party Defendants.

Civ. No. 90–2118 (GG).

United States District Court, D. Puerto Rico.

Feb. 9, 1993.

## ORDER

CASTELLANOS, United States
Magistrate Judge.

A hearing was held regarding several motions on conflict of interest and disqualification of Attorney Jack Chilingirian upon assuming the legal representation of third-party defendants[1] brought in this lawsuit by a former client.[2] A related request for disqualification by plaintiff which had previously been considered moot[3] was reinstated.

Atty. Chilingirian testified as to his relation with the third-party defendant since their inception, January 1990, when these corporations acquired the assets of Chapman Industries Corp. (old Chapman) upon its liquidation from a bank foreclosure sale. Old Chapman had been initially sued in Puerto Rico on a patent infringement claim and the action was removed to Chicago. Atty. Chilingirian requested therein to assist in its defense when a default judgment for $19 Million was issued (Exhibits 1–2). Thereafter, and since plaintiffs found collection was not possible, an infringement action against defendant Asset Conservation and the Guijarros was instituted. New Chapman (which had continued doing business with them) agreed to assist in their defense.

The Guijarros were also claiming from new Chapman a right to indemnification from any judgment that might be rendered against them. While Atty. Chilingirian acted as co-counsel with the Guijarros' local representative, Attorney Alberto Pérez–Hernández, they agreed to address the indemnification issue on a later date. The Guijarros were directly paying their local counsel while Atty. Chilingirian was being paid and retained by Chapman.

Through his testimony Atty. Chilingirian indicated that the Guijarros did not convey to him any information or documents that would undermine their claim on the basis of the third-party complaint against new Chapman. Since the onset of their relations Atty. Chilingirian's position was that there was no entitlement to indemnification. He is convinced that no conflict exists for not having acquired from the Guijarros any adverse information to their interest. During their meetings there was always a third party present and he never consulted with them alone. Regarding plaintiff's request for disqualification, Atty. Chilingirian saw no relevance between the patent infringement claims and the indemnification requested by defendants considering the latter but a collateral issue. To explain the sworn statement obtained from the Guijarros and which is now part of the record (D.E. # 30), which may be considered prejudicial to the indemnification claim, he testified same was originated by this magistrate's request for a pretrial order.[4] The situation between counsel and the Guijarros changed by the filing of the third-party complaint. Prior to assuming third party defendant's representation, Atty. Chilingirian requested to withdraw as counsel for the Guijarros turning moot plaintiff's initial petition for disqualification (D.E. # 65).

Defendants and third party plaintiffs (the Guijarros) thereafter requested Atty. Chilin-

---

1. Third-party defendants being now represented by Attorney Chilingirian are Chapman Security Systems, Inc. (new Chapman) and Code Alarm, Inc.

2. Defendants herein Asset Conservation, Inc., Gabriel Guijarro Brunet, Iris Mieres de Guijarro and their conjugal partnership (the Guijarros).

3. See Report and Recommendation filed August 18, 1992 (D.E. # 72).

4. Still, the deposition of Mr. Guijarro dated August 9, 1991, shows Atty. Chilingirian offered to execute an affidavit as to the non-existence of such indemnification (Exhibit A, pp. 29–30).

girian's disqualification on additional grounds. In support of their contentions testified Mr. Gabriel Guijarro. Atty. Chilingirian, a shareholder of Code Alarm and member of the Board of Directors, acted at all prior times as their co-counsel upon having a common interest at the beginning as to the patent infringement and his own request to new Chapman for legal assistance (Exhibit F). During their professional relation Atty. Chilingirian was free to access the Guijarros' home/office filing cabinets, requested and examined every document related with their business and their way of operations. They met both in Puerto Rico and during their trips to Detroit. He had access also to letter from Chapman's counsel in Puerto Rico which is to be used as evidence of indemnification (Exhibits D, F) and even obtained a sworn statement from him which may now be considered detrimental to their indemnification claim.

Mr. Guijarro further testified that because of their close relation with Atty. Chilingirian, he considers counsel is even able to "read his mind", knowing him in and out and the way he thinks to the degree that the witness feels uncomfortable when counsel addresses him.

Although recognizing that Atty. Chilingirian's expertise and acknowledged capacity in these complicated issues may not be available to the court, this magistrate could not avoid but noticing the demeanor and the embarrassment and awkwardness displayed by the witness when confronting each other during cross-examination.

Atty. Alberto Pérez–Hernández testified that during the initial proceedings he considered at all times Atty. Chilingirian as outside counsel, relying on him for the complications of a patent infringement claim. He shared with Atty. Chilingirian all information related to his clients, the Guijarros, they talked by phone, communicated in writing, and both made trips to meet and discuss all issues, without any reservation. The transcript of Mr. Guijarro's deposition would also sustain that Atty. Chilingirian acted as attorney for the Guijarros and claimed an attorney-client privilege (Exhibit A, pp. 36–40).

■ One of the main goals ascribed to recognition of the attorney-client privilege is to provide freedom from apprehension in consulting matters with counsel. It also provides necessary shelter to the loyalty required when sharing information, confidences and exchange of opinions and ways of thinking between counsel and client. It is the proper ambit to share secrets when there is an assurance that these would not be divulged to third parties nor brandished against oneself in the future. See Steven H. Goldberg, *The Former Client's Disqualification Gambit: A Bad Move in Pursuit of an Ethical Anomaly*, 72 Minn.L.Rev. 227 (1987).

■ Consonant with the above, the American Bar Association Rules of Professional Conduct [5] address the loyalty, confidentiality and conflict of interest considerations that legal counselling entails. Rules 1.6, 1.7, 1.9.

In *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953) and *Laskey Bros. of W.Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824 (2d Cir.1955), the interpretation of Canon 6 of Professional Ethics provides for disqualification of counsel to protect the prior confidence of information and freedom from apprehension during consultation.

This magistrate is now convinced that there is a possibility of a conflict of interest and a potential breach of the attorney-client relation, regardless of Atty. Chilingirian's good faith assertion that he may not be called as a witness for lacking personal knowledge. There is ample reason to infer that he was privy to privileged attorney-client information.

In addition, although the evidence did not specifically pin point towards a violation of Canon 9 as to the appearance of professional impropriety and the two step analysis enunciated in *McCuin* is not warranted,[6] the appearance dangles over counsel's head regardless of his prior zealous representation in the interest of a prior client with whom he initially shared a common interest. *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir.1984).

Counsel Chilingirian may even be faced with the choice of avoiding effective and full

5. An attachment to Local Rule 211.4(B) in this district, adopted by the ABA on August 2, 1983.

6. *McCuin v. Texas Power and Light Co.*, 714 F.2d 1255 (5th Cir.1983).

cross-examination of his former client, in detriment to the subsequent one, for fear of misusing confidential information. *United States v. Shepard*, 675 F.2d 977 (8th Cir. 1982).

The substantially related criteria to assess a conflict of interest situation was fairly discussed insofar as the patent infringement vis a vis indemnification and it may well support Atty. Chilingirian's belief to initially oppose disqualification as requested by plaintiff. However, now face with his former client's fears and apprehensions, and expectation of confidentiality and loyalty, a wider analysis warrants disqualification be in order. *Figueroa Olmo v. Westinghouse Electric Co.*, 616 F.Supp. 1445, 1449 (D.P.R.1985).

■ Unlike a criminal case, the third-party defendant's right to counsel of its choice does not fall within the Sixth Amendment constitutional protection. As the First Circuit stated in *Kevlik*, supra, it is "more important than unethical conduct be prevented than that defendant have an unfettered right to counsel of its choice", citing *United States v. Cunningham*, 672 F.2d 1064, 1071 (2d Cir.1982).

Therefore, defendants and third party plaintiffs' request to disqualify counsel IS GRANTED.

IT IS SO ORDERED.