**Barbara GRUTTER, Plaintiff,**

v.

**Lee BOLLINGER, Jeffrey Lehman, Dennis Shields, Regents of the University of Michigan, and The University of Michigan Law School, Defendants.**

**Civil Action No. 97–CV–75928–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 17, 1998.

Kerry L. Morgan, Pentiuk & Couvreur, Taylor, MI. Patrick J. Wright, Farmington Hills, MI, for Plaintiff.

John A. Payton, Jane Sherburne, Wilmer, Cutler, Washington, DC, Leonard M. Niehoff, Butzel, Long, Detroit, MI, for Defendants.

### *OPINION AND ORDER STRIKING AUGUST 6, 1998, "OPINION" OF JUDGES FEIKENS AND COOK*

*and*

### *OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR AN ORDER DESIGNATING ACTIONS AS COMPANION CASES*

FRIEDMAN, District Judge.

This matter is presently before the court on one aspect of Defendants' Motion for Reassignment or, Alternatively, for Designating Actions as Companion Cases.[1] Plaintiff has filed a response in opposition, and defendants have filed a reply. Pursuant to

---

1. Defendants' motion is presented in two parts. The first part is addressed to the chief judge and seeks an order of reassignment pursuant to E.D. Mich. LR 83.11(b)(2). The second part is addressed to me and seeks an order designating two actions as companion cases pursuant to E.D. Mich. LR 83.11(b)(7)(A). This opinion resolves only the second part of defendants' motion.

E.D. Mich. LR 7.1(e)(2), the court shall decide this motion without oral argument.

*Background*

On December 3, 1997, plaintiff Barbara Grutter commenced this action under 42 U.S.C. §§ 1981, 1983 and 2000d on behalf of herself and others similarly situated. Grutter, who is white, alleges that in June 1997 The University of Michigan Law School rejected her application for admission because of her race. Grutter alleges that the law school has an admissions policy whereby "students from favored racial groups had a significantly greater chance of admission than students with similar credentials from disfavored racial groups." *Complaint*, ¶ 20. Plaintiff further alleges that "race was one of the predominant factors ... used for determining admission" and that this policy is not justified by any compelling state interest. *Id.* ¶¶ 23, 24. Plaintiff claims that defendants have violated her Fourteenth Amendment right to equal protection and a federal statute prohibiting racial discrimination by educational institutions receiving federal funds, 42 U.S.C. § 2000d. She seeks damages, injunctive and declaratory relief, and attorney fees and costs. She also proposes to represent a class of law school applicants whose applications for admission were evaluated less favorably because of their race.

On October 14, 1997, plaintiffs Jennifer Gratz and Patrick Hamacher commenced Civil Action No. 97–75231 against Lee Bollinger (the current president of The University of Michigan), James J. Duderstadt (the president of The University of Michigan immediately preceding Bollinger), The University of Michigan, and The University of Michigan College of Literature, Arts and Science ("LS & A"). The 97–75231 matter is assigned to Judge Patrick J. Duggan of this court. Gratz and Hamacher, both of whom are white, allege that in 1995 and 1997, respectively, the University of Michigan's LS & A undergraduate college rejected their applications for admission because of their race.

They allege that the undergraduate college has an admissions policy which favors certain racial groups over others; that race is a predominant factor in the admissions process; and that this policy is not justified by any compelling state interest. *See Gratz Complaint*, ¶¶ 19, 22, 23. Plaintiffs Gratz and Hamacher claim that defendants have violated their Fourteenth Amendment right to equal protection and 42 U.S.C. § 2000d. They seek damages, injunctive and declaratory relief, and attorney fees and costs, and propose to represent a class of LS & A applicants whose applications for admission were evaluated less favorably because of race.

On July 15, 1998, defendants filed a motion in the *Grutter* matter seeking at page one the following relief:

1. Pursuant to Local Rule 83.11(b)(2), Defendants hereby move the Chief Judge (or her designee) for an order reassigning *Grutter v. Bollinger, et al.*, Civil Action No. 97–75928 (E.D.Mich.1997) from Judge Friedman to Judge Duggan, who is presiding over *Gratz, et al. v. Bollinger, et al.*, Civil Action No. 97–75231 (E.D.Mich.1997).

2. Alternatively, pursuant to Local Rule 83.11(b)(7)(A), Defendants move Judge Friedman for an order designating these matters as "companion cases."

*Motion for Reassignment Pursuant to Local Rule 83.11(b)(2)* [2]

In support of their first request—for reassignment pursuant to E.D. Mich. LR 83.11(b)(2)—defendants argue that the complaints in *Grutter* and *Gratz* are "virtually identical"; that the parties are represented by the same attorneys in both cases; that in the two cases "most of the defendants overlap"; and that reassignment "will promote docket efficiency and conserve judicial resources by avoiding duplication of efforts and the risk of inconsistent rulings." *Memoran-*

---

**2.** E.D. Mich. LR 83.11(b)(2) states:

To promote docket efficiency, or to conform to the requirement of any case management plan adopted by the Court, or upon consent of the parties, or after notice and hearing, or in the interests of justice, the Chief Judge may order a civil case to be reassigned, but only with the consent of the Judge to whom the case was originally assigned and with the consent of the Judge to whom it is to be reassigned.

*dum of Law in Support of Defendants' Motion,* p. 1.

Defendants' motion, which bears only the *Grutter* caption and civil action number, was filed on July 15, 1998. The motion is accompanied by a cover letter dated July 15, 1998, addressed to Chief Judge Taylor. Copies of the motion, and of the cover letter, were also delivered to me, to Judge Duggan, and to all counsel of record. The second paragraph of defendants' cover letter states:

Local Rule 83.11(b)(2) requires that this Motion be addressed to you. As your spouse is a member of the Board of Regents of the University of Michigan, which has been named as a defendant in this litigation, we anticipate that you will likely direct this matter to another judge for consideration.

On July 23, 1998, Chief Judge Taylor issued an Order of Disqualification and Transfer. In this order, which bears only the *Grutter* caption and civil action number, Chief Judge Taylor stated that she "must disqualify herself from consideration of the motion, pursuant to 28 U.S.C. § 455, for the reason that her spouse, a Regent of the Defendant University, is a Defendant in both of the lawsuits in issue." Chief Judge Taylor further ordered that "the motion be and hereby is reassigned for consideration and decision by the two former Chief Judges of this Court who remain in service, Judge John Feikens and Judge Julian Abele Cook, Jr."

On July 31, 1998, Judges Feikens and Cook, sitting as a two-judge panel, conducted a hearing "to determine whether or not these two cases, the Barbara Grutter case and the other case, Gratz et al., are companion cases." *Hearing Transcript,* p. 4. The hearing transcript bears only the caption and civil action number of the *Grutter* matter.

On August 6, 1998, Judges Feikens and Cook issued a 5–page "opinion." Inexplicably, this "opinion" bears the caption and civil action number not only of *Grutter* but also of *Gratz.* This "opinion" was filed on August 6, 1998, and entered on the docket in the *Grutter* action on August 7, 1998; however, this "opinion" has not been entered on the docket

in the *Gratz* action. Judges Feikens and Cook, acting "as designees of Hon. Anna Diggs Taylor" and as a "specially convened judicial panel," *"opinion,"* p. 1, stated that

The *Grutter* Defendants moved for reassignment pursuant to E.D. Mich. LR 83.11(b)(2) or for a designation of the case as a companion to *Gratz* under E.D. Mich. LR 83.11(b)(7), and presented these issues to Chief Judge Anna Diggs Taylor. Upon disqualifying herself from considering the motion because her husband is a Regent of the University of Michigan in accordance with 28 U.S.C. § 455, Chief Judge Taylor entered an Order on July 23, 1998 that reassigned the motion to this judicial panel.

As argued by the parties, the sole and narrow issue we are called upon to decide is whether *Grutter* and *Gratz* are companion cases under E.D. Mich. LR 83.11(b)(7).

*"Opinion,"* p. 2. The "opinion" did not make any finding or conclusion regarding the portion of defendants' motion which was addressed to Chief Judge Taylor—namely, the **first** prong, which seeks reassignment pursuant to E.D. Mich. LR 83.11(b)(2). Instead, the "opinion" focused exclusively on the portion of defendants' motion which was addressed to me—namely, the **second** prong, which seeks an order designating the two cases as companions pursuant to E.D. Mich. LR 83.11(b)(7)(A). Judges Feikens and Cook "conclude[d] that *Grutter* and *Gratz* are companion cases under the provisions of Local Rule 83.11(b)(7)." *"Opinion,"* p. 5. The "opinion" does not purport to either grant or deny defendants' motion; the motion seeks an order of reassignment, whereas the "opinion" is not accompanied by an order, but appears to be more in the nature of an advisory opinion.[3]

The court shall strike the "opinion" of Judges Feikens and Cook from the record of this case. Judges Feikens and Cook have no authority to take any action or issue any rulings in this case, and their "opinion" is a nullity.

---

**3.** Courts in the American legal system, by longstanding tradition and case law, do not issue

advisory opinions. *See* 13 Charles A. Wright &

■ Judges Feikens and Cook lacked authority for several reasons. First, their designation by the Chief Judge was unlawful. When Chief Judge Taylor disqualified herself, a federal statute required that she assign the portion of defendants' motion addressed to her to "the district judge in active service, present in the district and able and qualified to act, who is next in precedence." 28 U.S.C. § 136(e).[4] If for whatever reason Chief Judge Taylor believed this statute did not apply, she might instead have elected to reassign the portion of defendants' motion addressed to her to another judge by blind draw pursuant to E.D. Mich. LR 83.11(d)(1).[5] This alternative procedure would at least have protected the appearance of fairness and impartiality. However, Chief Judge Taylor followed neither § 136(a) nor Local Rule 83.11(d)(1), but instead devised her own, novel procedure, whereby she reassigned the entire motion (not just the portion addressed to her) to two judges whom she personally selected to act as a special two-judge panel.

In her Order of Disqualification and Transfer, Chief Judge Taylor does not cite any authority permitting her to reassign defendants' motion, or any portion thereof, to any other judge or judges she has personally selected. Nor has the court succeeded in discovering any statute, local court rule, or precedent authorizing this method of reassignment. To the contrary, by statute, case law, and common sense, once the chief judge disqualified herself she was duty bound to refrain from taking any further action in the matter whatsoever.

While Chief Judge Taylor recognized that she must disqualify herself pursuant to 28 U.S.C. § 455,[6] she nonetheless violated her legal and ethical duty by selecting the judicial officers who were to act in her stead. As one respected treatise has noted,

> When the chief judge of a district is disqualified under § 455, the chief judge should not be the one to assign the case to another judge, since this would violate the statutory command that the disqualified judge be removed from all participation in the case and, in addition, might create suspicion that the disqualified judge will select a successor whose views are consonant with his own.

32 Am.Jur.2d *Federal Courts* § 52 (1995). *American Jurisprudence* cites as case authority for this proposition *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983). In *McCuin*, a chief judge disqualified himself and assigned the case to another district judge of his own choosing. In remanding, the Fifth Circuit ordered that the case be reassigned "in accordance with local practice, if one exists" or, alternatively, to the senior active judge in accordance with 28 U.S.C. § 136(e). *Id.* at 1261. The court noted that a chief judge "patently . . . has no authority to sign [an order of assignment], or any other judicial order, pertaining to a proceeding in which he is disqualified. . . . Congress intended the statutory antisepsis to be absolute in order to avoid any bacterium of impugnment." *Id. See also* R. Flamm, *Judicial Disqualification* § 22.3.2 (1996) ("The reasons for the rule prohibiting a disqualified judge from having any input into the reassignment of the case are plain. To permit a disqualified judge to participate in the selection of his successor judge would violate the rule that a disqualified judge must be removed from all participation in the case . . . ."). By continuing to act after disqualifying herself, Chief Judge Taylor clearly violated § 455, and any action taken subsequent to her disqualification is a nullity. *See id.* § 22.4.1 ("When a judge presumes to take substantive action in a case despite having

Arthur R. Miller, *Federal Practice and Procedure* § 3529.1 (1984).

4. 28 U.S.C. § 136(e) states: "If a chief judge is temporarily unable to perform his duties as such, they shall be performed by the district judge in active service, present in the district and able and qualified to act, who is next in precedence."

5. Local Rule 83.11(d)(1) states:
   In Ann Arbor, Detroit, Flint and Port Huron, when a Judge to whom a case is assigned is

disqualified from hearing it, the Clerk shall reassign the case in accordance with (a)(1). Local Rule 83.11(a)(1), in turn, states in relevant part:
   In Ann Arbor, Detroit, Flint and Port Huron, the Clerk shall employ, a random method for the assignment to Judges of civil cases and special civil cases. . . .

6. Under § 455(b)(5)(i), a judge must disqualify herself if her spouse "[i]s a party to the proceeding, or an officer, director, or trustee of a party."

802

recused himself from it ... any such action is often considered a nullity and any orders issued by such a judge are considered absolutely void for want of jurisdiction.").

■ Chief Judge Taylor's order of transfer also violates 28 U.S.C. § 137, which states that the court's business "shall be divided among the judges as provided by the rules and orders of the court. The chief judge of the district court **shall be responsible for the observance of such rules and orders,** and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe." (Emphasis supplied.) The "rules and orders of the court" clearly provide for a case to be randomly reassigned in the event of disqualification. The random assignment of cases, and the random reassignment in the event of disqualification, has the obvious, commonsensical and beneficial purpose of maintaining the public's confidence in the integrity of the judiciary. This purpose is defeated when cases or motions are assigned, or reassigned, to judges who are handpicked to decide the particular case or motion in question. A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda. The subjective method employed in the present case was anything but random, and at a minimum the appearance of impropriety is manifest. Chief Judge Taylor's decision to disregard the procedure prescribed by 28 U.S.C. § 136(e) and the alternative blind draw procedure prescribed by this court's own local rules, tarnishes this court's appearance of fairness and appears to place the court's imprimatur upon a judge-shopping practice which we, collectively as a bench, in the past always have denounced.

■ The infirmity of Chief Judge Taylor's order is compounded by the fact that defendants' motion was reassigned to not one, but two judges of this court. The court has searched diligently, using computer data bases as well as all of the other resources available to it, but has been unable to discover any statute, local court rule, or precedent authorizing the appointment at the district court level of a "two-judge panel" for any purpose. While three-judge panels are known to the federal system at both the district and circuit levels,[7] a two-judge panel apparently has **never**—until now—been convened within any United States District Court. Not only does such a creature not exist; its existence is positively inconsistent with both 28 U.S.C. § 136(e), which requires the duties of a chief judge who is temporarily unable to act to be performed by "the district judge" (not judges) next in precedence, and with this court's and the American legal system's long-standing practice of assigning a case or motion, at the trial level, to a single judge.

■ Chief Judge Taylor's Order of Disqualification and Transfer suffers from an additional defect which further detracts from its legitimacy: The order purports to reassign **both portions** of defendants' motion to Judges Feikens and Cook, although only the **first** portion—namely, the request for an order of reassignment pursuant to Local Rule 83.11(b)(2)—was directed to the chief judge. The **second** portion—namely, the request for an order designating the two cases as companions pursuant to Local Rule 83.11(b)(7)(A)—is specifically addressed to me, and not to the chief judge. Nonetheless, Chief Judge Taylor's order reassigned **both** requests to Judges Feikens and Cook, stating:

> Defendants having filed a motion before Chief Judge Anna Diggs Taylor in the above-entitled matter, requesting that she, as Chief Judge, reassign the matter pursuant to L.R. 83.11(b)(2) to the judge to whom an earlier-filed case has been assigned; or in the alternative, that the matter be reassigned as a companion case to the predecessor case, pursuant to L.R. 83.11(b)(7); ...
>
> IT IS FURTHER ORDERED that the motion be and hereby is reassigned for consideration and decision by the two former Chief Judges of this Court who re-

---

7. *See, e.g.,* 28 U.S.C. § 46(b) (three-judge circuit court panels); 28 U.S.C. § 2284 (three-judge district courts); E.D. Mich. LR 83.22(g)(1) (three-judge panels in attorney reinstatement proceedings).

main in service, Judge John Feikens and Judge Julian Abele Cook, Jr.

Chief Judge Taylor had authority to reassign the **first** portion of defendants' motion to another judge, by the procedure set forth in either 28 U.S.C. § 136(e) or E.D. Mich. LR 83.11(d)(1) and (a)(1), but she had no authority to reassign the **second** portion of defendants' motion by any procedure.

The court concludes that Chief Judge Taylor acted without authority when she reassigned both portions of defendants' motion to a hand-picked, two-judge panel. Because this two-judge panel was constituted unlawfully, it lacked any authority to convene, to hear argument, to issue any opinion or decision, or to take any action of any kind whatsoever in this case. The court therefore concludes that the August 6, 1998, "opinion" of Judges Feikens and Cook is a nullity, void *ab initio*, and without any purpose or effect whatsoever.[8] The docketing of this "opinion" in a case properly assigned to a judge by blind draw, is an affront to the dignity and the independence of the court and an unlawful intrusion upon and interference and meddling with this court's business. The court shall therefore strike this "opinion" from the docket of Civil Action No. 97–75928.

■ The court notes that the "opinion" itself lacks legitimacy for reasons aside from, and in addition to, the fact that the two-judge panel was unlawfully constituted. As noted above, defendants' motion presented only **one request** to Chief Judge Taylor—namely, that *Grutter* be reassigned to Judge Duggan pursuant to E.D. Mich. LR 83.11(b)(2). Defendants' **other request**, for designation of the two cases as companions pursuant to E.D. Mich. LR 83.11(b)(7)(A), was specifically directed to me, and **not** to the chief judge. Nonetheless, the two-judge panel, through Judge Feikens, indicated at the hearing that the panel's "purpose is to determine whether or not these two cases ... are companion cases." *Hearing Transcript*, p. 4. The pan-

el's focus throughout the hearing was whether *Grutter* and *Gratz* are companion cases within the meaning of Local Rule 83.11(b)(7). *See id.* at 4, 7, 8, 14, 15, 20, 21, 22, 23. Reassignment under Local Rule 83.11(b)(2), which defendants had specifically addressed to Chief Judge Taylor, was **never mentioned** at the hearing by either member of the two-judge panel. Thus, the two-judge panel devoted the hearing to consideration of an issue never presented to the chief judge, and essentially ignored the issue which had been presented to her.

The "opinion" likewise asserts that "[d]efendants moved for reassignment pursuant to E.D. Mich. LR 83.11(b)(2) or for a designation of the case as a companion to *Gratz* under E.D. Mich. LR 83.11(b)(7), **and presented these issues to Chief Judge Anna Diggs Taylor.**" "Opinion," p. 2 (emphasis supplied). Of course, only the first issue was presented to Chief Judge Taylor. The "opinion" also incorrectly asserts that "the sole and narrow issue we are called upon to decide is whether *Grutter* and *Gratz* are companion cases under E.D. Mich. LR 83.11(b)(7)." *Id.* Obviously, this is **not** the issue defendants presented to the chief judge; and, as the chief judge's "designees," the two-judge panel had no business concerning itself with this issue. Nonetheless, the focus of the "opinion" is entirely upon the companion case question, and the conclusion of the "opinion" is that "*Grutter* and *Gratz* are companion cases under the provisions of Local Rule 83.11(b)(7)." *Id.* at 5. The reassignment rule, Local Rule 83.11(b)(2), is mentioned only in passing, *see id.* at 2 & n. 1, and is completely absent from the two-judge panel's analysis.

■ The court also notes that the document issued by Judges Feikens and Cook is void because it is merely an advisory opinion. *See* n. 1, *supra.* While Chief Judge Taylor's Order of Disqualification and Transfer reas-

---

8. Regrettably, Judges Feikens and Cook continued to participate in this proceeding even after I personally called to their attention, by a memorandum circulated to all members of this court on July 31, 1998, that (1) two-judge panels do not exist, (2) a disqualified judge may not select his/her successor judge, (3) this court's local rule on disqualification of judges calls for the use of reassignment by blind draw, (4) 28 U.S.C. § 136(e) specifies the judge who is to act when a chief judge is temporarily unable to do so, and (5) my consent to a reassignment would be required in any event and I do not consent.

signed defendants' motion "for consideration and decision," in fact the "opinion" does not make a decision or grant any relief requested in defendants' motion. Rather, the "opinion" simply opines that *Grutter* and *Gratz* are companion cases.

Finally, the court notes that Judges Feikens and Cook, both at the hearing and in their "opinion," completely ignored the matter of my consent to any reassignment. Local Rule 83.11(b)(2) specifically states that a case may be reassigned "only with the consent of the Judge to whom the case was originally assigned and with the consent of the Judge to whom it is to be reassigned." Likewise, Local Rule 83.11(b)(7)(C) requires reassignment of a companion case only "[w]hen it becomes apparent to the Judge to whom a case is assigned and to a Judge having an earlier case number that two cases are companion cases." At the hearing, plaintiff's counsel properly raised this issue, but Judge Feikens interrupted him and asserted that consent is an issue only "in non-companion cases." *Hearing Transcript*, p. 21. Here Judge Feikens erred in two ways. First, the only issue addressed to the chief judge was reassignment under Local Rule 83.11(b)(2), which specifically requires consent of both the assignor and assignee judges. Second, under Local Rule 83.11(b)(7)—which concerns the portion of defendants' motion that was never presented to the chief judge—reassignment is required only when it is "apparent to" the assignor judge that the two cases in question are companions. If the relatedness of the cases is not apparent to the assignor judge then, in effect, he will not consent to the reassignment. And, for the reasons stated below, it is not at all apparent to me that *Grutter* and *Gratz* are companion cases, notwithstanding

the contrary "opinion" of the hand-picked two-judge panel.

For these reasons, the court concludes that Chief Judge Taylor lacked authority to refer defendants' motion, or any portion thereof, to Judges Feikens and Cook; and that the August 6, 1998, "opinion" of Judges Feikens and Cook is unlawful, void and must be stricken.

*Motion for an Order Designating Cases as Companions Pursuant to Local Rule 83.11(b)(7)(A)* [9]

In support of their alternate request for designation of the two cases as companions pursuant to E.D. Mich. LR 83.11(b)(7)(A), defendants argue that *Gratz* and *Grutter* "are premised on the same alleged constitutional and statutory violations. The two lawsuits challenge the admissions process of two units within the University of Michigan." *Defendants' Motion*, p. 2. Defendants also repeat the arguments made in support of the first part of their motion concerning the other alleged similarities between the two cases. While Judges Feikens and Cook purport to have "ruled" that the two cases are companions, they had no authority to make such a ruling and, as noted above, the court shall strike their "opinion" from the record of this case. Thus, the companion case issue is still pending and I shall decide it at this time.

This court's Local Rule 83.11(b)(7)(A) defines companion cases as those in which it appears that:

(i) substantially similar evidence will be offered at trial, or

(ii) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

---

9. E.D. Mich. LR 83.11(b)(7) states:
(7) Companion Cases
(A) Companion cases are those cases in which it appears that:
(i) substantially similar evidence will be offered at trial, or
(ii) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

(B) Counsel ... shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the civil cover sheet.
(C) When it becomes apparent to the Judge to whom a case is assigned and to a Judge having an earlier case number that two cases are companion cases, upon consent of the Judge having the earlier case number, the Judge shall sign an order reassigning the case to the Judge having the earlier case number.

It is quite apparent that *Grutter* and *Gratz* are not companion cases under either definition. The cases do not have "the same or related parties." The plaintiff in *Grutter* is an applicant to the law school who seeks to represent a class of white applicants who were denied admission to the law school during the 1995–1998 academic years. The plaintiffs in *Gratz* are applicants to the LS & A undergraduate college who seek to represent a class of white applicants who were denied admission to that college since 1995–1996. The defendants in the two cases are completely different, the only overlap being Lee Bollinger, who was dean of the law school during part of the period at issue in *Grutter* and is the current president of The University of Michigan. Other than Bollinger, there is no overlap whatsoever in the parties of the two cases.

Nor is it apparent to me that the two cases "arise out of the same transaction or occurrence." The "transaction" at issue in *Grutter* is the rejection of plaintiff Grutter's application for admission to the law school in June 1997. If a class is certified, the transaction at issue will be the rejection of the law school applications of the class members. The transaction in *Gratz* is the rejection of the applications of plaintiff Gratz and Hamacher for admission to the undergraduate college in April 1995 and the spring of 1997, respectively. If a class is certified in that case, the transaction at issue will be the rejection of the class members' applications to that institution. While the general legal issue (i.e., the constitutionality of an admissions policy which favors applicants of certain races over others) is the same in both cases, this is not the test under this court's companion case rule. Nor is the test whether the parties in the two cases are represented by the same attorneys.

By the same token, it is not apparent to me that "substantially similar evidence will be offered at trial" in the two cases. One of the attorneys who represents plaintiffs in both cases, Kirk Kolbo, has submitted an affidavit averring that defendants have produced "over 5,000 pages of documents in the two cases .... I do not believe that any documents produced or identified in one case were also produced or identified in the other

case." Kolbo Affidavit, ¶ 8. Mr. Kolbo also indicates that the defendants in *Gratz* have identified 20 individuals who are primarily responsible for admissions policies and the use of racial preferences at the undergraduate college, and that the defendants in *Grutter* identified 22 individuals who are primarily responsible for admissions policies and the use of racial preferences at the law school. There is no overlap between the two groups. *See Plaintiff's Memorandum in Opposition to Motion for Reassignment or Designation as Companion Cases,* pp. 2–3. The reason for the lack of any overlap apparently is due to the simple fact that the law school and the undergraduate college operate as independent units within The University of Michigan, and it appears their admissions policies have little, if anything, to do with one another.

For all of these reasons, it is quite apparent to me that the *Gratz* and *Grutter* cases are not companions under E.D. Mich. LR 83.11(b)(7)(A). Accordingly, there is no occasion for me to reassign this matter to Judge Duggan.

Additionally, the court would note that the timing of defendants' motion further counsels against reassignment. As noted above, the complaint in *Grutter* was filed on December 3, 1997. The instant motion was not filed until July 15, 1998—more than *seven months* later. I raised the companion case issue at two conferences with counsel, and no one seriously argued on either of those occasions that I should consider reassigning the case to Judge Duggan. Nor did either party file a motion or take any other action seeking reassignment—until now, more than seven months after the filing of the complaint in *Grutter*.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that the August 6, 1998, "opinion" of Judges Feikens and Cook is stricken from the docket in *Grutter v. Bollinger,* 97–75928.

IT IS FURTHER ORDERED that defendants' motion pursuant to E.D. Mich. LR 83.11(b)(7)(A) for an order designating *Grut-*

**806**

*ter v. Bollinger,* 97–75928, as a companion to *Gratz v. Bollinger,* 97–75231, is denied.